UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-00974-H

STATE AUTO PROPERTY & CASUALTY                                          PLAINTIFF
INSURANCE COMPANY

vs.

J.R.E.                                                                  DEFENDANT

and

C.A.E.                                                                  DEFENDANT

and

E.E., as an individual and as a parent                                  DEFENDANT
and next friend of E.M.E., a minor

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 2201(a), State Auto Property & Casualty Insurance Company ("State Auto") seeks a declaration of rights between it and Defendants, J.R.E.; C.A.E.; and E.E., as an individual and as a parent and next friend of E.M.E., a minor. Specifically, State Auto requests a declaration that it has no duty to defend or indemnify its insureds, J.R.E. and C.A.E., in an underlying civil action brought by E.M.E., by and through E.E., stemming from acts of sexual misconduct allegedly committed against E.M.E.

After State Auto moved for summary judgment, J.R.E. and C.A.E. each filed a cross-motion for summary judgment. The question presented here is whether the homeowners' insurance policy issued by State Auto to J.R.E. and C.A.E. (the "Policy") requires State Auto to defend and indemnify the insureds in the underlying action. While all parties agree that there is

1

no question of fact in this case, J.R.E. argues, in the alternative, that a question of fact does preclude entry of summary judgment in favor of State Auto.

These questions certainly present some interesting issues. For the reasons that follow, the Court will grant State Auto's motion for summary judgment and deny the cross motions for summary judgment filed by J.R.E. and C.A.E.

**I.**

Briefly summarized, the relevant facts are these. In March 2013, Defendant E.M.E. filed suit against her grandparents, J.R.E. and C.A.E., in Jefferson Circuit Court, by and through her mother and next friend, E.E., alleging that her grandfather, J.R.E., had sexual contact with her between February 20, 2001, and February 19, 2004. She further asserts that his conduct was intentional, willful, negligent, grossly negligent, reckless, malicious, oppressive, and or wanton, causing her to sustain serious permanent personal injuries in and about her body, and other damages.

Although E.M.E. alleges no intentional wrongdoing by her grandmother, C.A.E., she claims that C.A.E. had a responsibility to protect her; that C.A.E. knew her husband, J.R.E., was molesting E.M.E.; and that C.A.E. did nothing to prevent the alleged sexual abuse. E.M.E. claims that C.A.E.'s conduct was "negligent and/or grossly negligent, and/or reckless, and/or wanton."

At the time these events arose, State Auto provided homeowners' insurance for J.R.E. and C.A.E. Its relevant portions provide the following:

"Coverage E" of the Policy requires State Auto to defend and indemnify when

> a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies . . . .

2

The Policy defines an "occurrence" as

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> (a) "Bodily injury" . . . .

A series of exclusions in the Policy limit the scope of this personal liability coverage. Specifically, the Policy contains the following provisions:

> **Coverage E – Personal Liability And**
> **Coverage F – Medical Payments to Others**
> Coverages E and F do not apply to the following:
> 1. **Expected Or Intended Injury**
>    "Bodily injury" or "property damage" which is expected or intended by an "insured" . . . .
>
>    . . .
>
> 7. **Sexual Molestation, Corporal Punishment Or Physical or Mental Abuse**
>    "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse . . . .

Based upon these provisions, State Auto argues that (1) the claims against the insureds in the underlying action do not allege "occurrences" for which State Auto owes coverage, (2) the Policy's intentional act exclusion precludes coverage, and (3) the Policy's sexual molestation exclusion also precludes coverage.

Conversely, Defendants argue that Coverage E of the Policy compels State Auto to defend and indemnify J.R.E. and C.A.E. in the underlying action. In the alternative, Defendant J.R.E. states that he "has suffered from several strokes[,] . . . is experiencing dementia[,] . . . [and] suffers from Parkinson's disease," which he argues presents a question of fact as to

whether State Auto must defend and indemnify him. To resolve this action, the Court will examine the effect of both the intentional act exclusion and the sexual molestation exclusion.

**II.**

Federal Rule of Civil Procedure 56 entitles a party to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show that there is no genuine issue as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). Once accomplished, the nonmoving party can overcome summary judgment by controverting the movant's argument with specific facts. *Matsushita Electric Indus. Co., Ltd. V. Zenith Radio Crop.*, 475 U.S. 574, 587 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court must view the record and make inferences from the alleged facts in the light most favorable to the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008).

This Court construes the Policy under Kentucky law. Therefore, the Court will interpret the Policy liberally in favor of the insureds, resolve all doubts in their favor, strictly construe exceptions and exclusions to make insurance effective, and interpret clear and unambiguous language in the Policy according to its plain and ordinary meaning. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005) (citing *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992)).

**III.**

The intentional act exclusion is clear on its face. The question here is whether it excludes coverage for the sexual abuse claim lodged against J.R.E. and the negligence claim asserted against C.A.E.

**A.**

For many years, Kentucky courts have adhered to the rule of construction that when determining an insurer's duty to provide personal liability coverage in liability insurance cases, whenever an insured is alleged to have sexually abused a minor, the insured is deemed to have intended to harm the minor. *Goldsmith v. Physicians Ins. Co. of Ohio*, 890 S.W.2d 644, 646 (Ky. Ct. App. 1994); *see also Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992). The reason is that "[t]here is no such thing as negligent or reckless sexual molestation. . . . [S]exual molestation is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law." *Id.* This so-called "inferred intent" rule is said to apply even when the insured against whom the claim is brought lacked "actual subjective intent to harm or capacity to form that intent." *Goldsmith*, 890 S.W.2d at 646–47 (quoting *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 467 (3rd Cir. 1993)). How that rule applies in our circumstances decides much of this case.

Here, E.M.E. claims that J.R.E. sexually abused her. Because Kentucky courts infer intent as a matter of law from such an allegation, this Court must infer that J.R.E. intended harm to E.M.E. for purposes of determining State Auto's liability under the Policy. This inference must apply, therefore, even though E.M.E. describes J.R.E.'s conduct as "negligent," "grossly negligent," "reckless," "malicious," "oppressive," and "wanton." Moreover, because Kentucky

5

Courts apply the inferred intent rule even when the actor lacks the capacity to form intent, J.R.E.'s assertions that he has had several strokes, is experiencing dementia, and suffers from Parkinson's disease does not present a question of fact as to whether J.R.E. intended the bodily harm E.M.E. alleges.

Consequently, the Court finds that the intentional act exclusion, which precludes coverage for "'bodily injury' . . . intended by an 'insured,'" relieves State Auto of any duty either to defend or indemnify J.R.E. in the underlying action.

B.

The next question is whether the intentional act exclusion also precludes coverage for the injuries E.M.E. alleges in her negligence claim against C.A.E. The answer, oddly enough, is yes, and here is why.

The intentional act exclusion here closely resembles the intentional act exclusion disputed in *K.M.R.*, which removed from personal liability coverage bodily injury "[r]esulting from any act or omission that is intended **by any of you** to cause harm or that **any of you** could reasonably expect to cause harm." *K.M.R.*, 171 S.W.3d at 753. In determining whether this exclusion precluded coverage for a minor's negligence claim against her insured grandmother for harm stemming from her insured grandfather's sexual misconduct, the Kentucky Court of Appeals reasoned that the exclusion "denie[d] protection to an innocent actor who is tainted by association with an intentional wrongdoer." *Id.* at 754. The court therefore upheld the trial court's determination that the provision relieved the insurer of its responsibility to provide coverage for the injuries alleged in the negligence claim against the grandmother. *Id.* at 755.

Here, the disputed intentional act exclusion removes from coverage "'[b]odily injury' . . . which is expected or intended by **an** 'insured.'" (Emphasis added). By placing the indefinite

article "an" before the word "insured," the policy precludes coverage to all insureds for bodily injury intended by anyone insured under the Policy. Like the provision at issue in *K.M.R.*, this exclusion applies irrespective of whether the insured against whom the claim is brought is the intentional wrongdoer.

Because J.R.E. is deemed as a matter of law to have intended the harm C.A.E. allegedly permitted, and because J.R.E. was "an 'insured'" under the Policy, the intentional act exclusion also removes from coverage the injuries E.M.E. alleges in her negligence claim against C.A.E.

**IV.**

The Court's discussion could end here. In the interest of completeness, however, the Court will also consider whether the sexual molestation exclusion, which precludes coverage for "'bodily injury' . . . arising out of sexual molestation," relieves State Auto of any duty to defend or indemnify either J.R.E. or C.A.E. in the underlying action.

Under Kentucky law, courts broadly construe the phrase "arising out of" in insurance contracts, "requiring only some causal relation or connection between the claim and the underlying event." *W. Am. Ins. Co. v. Embry*, NO. 3:04CV-47-H, 2005 U.S. Dist. LEXIS 9387, at *9 (W.D. Ky. Apr. 25, 2005) ("[The exclusion removing coverage for 'bodily injury' . . . arising out of sexual molestation] evidence[s] a clear and specific intent to exclude all claims arising from sexual molestation, even those based on some theory other than the insured's intentional conduct—a theory such as negligence."); *see also K.M.R.* 171 S.W.3d at 755–56. In *K.M.R.*, for example, the Kentucky Court of Appeals observed that the disputed homeowner's policy excluded damages for bodily injury "'[a]rising out of . . . sexual molestation," and the court interpreted the provision as follows:

> "In drafting this exclusion, [the insurer] . . . removed from coverage an entire category of injuries; i.e., those arising out of sexual acts and physical or mental

7

abuse. This plainly worded exclusion should dispel any expectation of the [insureds] that either was entitled to be defended or indemnified by [the insurer] against a claim arising from sexual molestation—regardless of the identity of the actual perpetrator of the sexual offense." *Id.*

Like the policy considered in *K.M.R.*, the sexual molestation exclusion here precludes coverage for "'bodily injury' . . . arising out of sexual molestation." As in *K.M.R.*, this language removes from coverage an entire category of injuries—specifically, those arising out of sexual molestation. Because the injuries E.M.E. alleges against both insureds causally relate to J.R.E.'s sexual molestation of her, the alleged injuries "aris[e] out of sexual molestation" and therefore fall within the scope of the exclusion.

This is another reason why the Policy's personal liability coverage does not extend to the injuries E.M.E. alleges in her claims against J.R.E. and C.A.E.

## V.

In their memoranda, Defendants J.R.E. and C.A.E. argue that State Auto issued an endorsement to the Policy that replaces the original intentional act exclusion with one that affords coverage for the injuries E.M.E. alleges. They further argue that the endorsement eliminates the sexual molestation exclusion altogether. This is an interesting argument which relies exclusively upon a particular reading of the endorsement to replace all of the Policy language just discussed. For the reasons that follow, the Court does not believe that the endorsement language can carry such heavy freight.

The endorsement, entitled "Estates Option Condominium Endorsement," provides in relevant part:

> **SECTION II – LIABILITY COVERAGES**
> A. Coverage E – Personal Liability
>   The following *is added* to coverage E – Personal Liability
>   Personal Injury Coverage

8

>       If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:
>       1. Pay up to our limit of liability for the damages for which an "insured" is legally liable . . . ; and
>       2. Provide a defense at our expense by counsel of our choice . . . .

(Emphasis added).

The endorsement also includes the following definition section:

> **DEFINITIONS**
> The following definition is added:
> The definition of "bodily injury" is amended to include personal injury. "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
> 1. False arrest, detention or imprisonment;
> 2. Malicious prosecution;
> 3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> 4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> 5. Oral or written publication of material that violates a person's right of privacy.

Moreover, the endorsement contains the following exclusion section:

> **SECTION II – EXCLUSIONS**
> *With respect to the coverage provided by this endorsement*, Section II – Exclusions is deleted and replaced by the following:
> This insurance does not apply to:
> 1. "Personal Injury":
>     a. Caused by or at the direction of an "insured" with the knowledge that that act would violate the rights of another and would inflict "personal injury";
>             . . .

(Emphasis added).

The endorsement indicates that it adds coverage for claims against an insured for damages resulting from one of the five offenses listed as part of the endorsement's definition of "personal injury." Moreover, the "Exclusions" section of the endorsement states that it "delete[s] and replace[s]" the exclusions found in the original policy "*with respect to the coverage provided*

*by this endorsement.*" (Emphasis added). The plain language of the endorsement thus indicates that it deletes and replaces the exclusions found in the original policy *only with respect to the coverage added by the endorsement*—i.e. coverage for "injury arising out of one or more" of the five offenses listed under the definition of "personal injury." With respect to all other personal liability coverage, the exclusions in the original policy would apply.

In the underlying action, E.M.E. claims that J.R.E. sexually abused her and that C.A.E. negligently permitted that abuse. Neither claim corresponds to any of the five "offenses" for which the endorsement adds coverage. Consequently, the Court concludes that the exclusions found in the endorsement would not apply to those claims, and the exclusions found in the original policy remain in force.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is SUSTAINED and State Auto is entitled to a declaration that the claims against the insureds are not covered under the homeowner's insurance policy discussed in this Memorandum Opinion.

IT IS FURTHER ORDERED that J.R.E.'s motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that C.A.E.'s motion for summary judgment is DENIED.

This is a final order.

cc:     Counsel of Record